**Loyce PHILLIPS and wife, Inez Phillips, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 4179.**

United States District Court
E. D. Texas,
Tyler Division.

July 11, 1964.

Henry Schwartz, II, Tyler, Tex., for plaintiffs.

William Wayne Justice, U. S. Atty., Tyler, Tex., Stanley F. Krysa, U. S. Department of Justice, Ft. Worth, Tex., for defendant.

SHEEHY, Chief Judge.

This is an income tax refund case. The Plaintiffs are husband and wife and reside in Gladewater, Texas. The years involved are 1959, 1960 and 1961. The Plaintiff, Loyce Phillips, is and during the tax years involved was an independent oil operator with working interests in some 40 to 50 oil and gas wells, about ten of which were located in the Manuel Rionda Survey, Freestone County, near Fairfield, Texas, in the so-called Nan-Su-Gail Field. Most of the pertinent facts were stipulated by the parties as reflected by the Stipulation of Facts and exhibits thereto attached filed herein on May 8, 1964, and Supplemental Stipulation No. 1 filed on May 21, 1964. Said Stipulations of Facts and the exhibits thereto attached and said Supplemental Stipulation No. 1 are hereby adopted and made a part hereof.

Plaintiffs timely filed their income tax returns for the calendar years involved with the District Director of Internal Revenue in Dallas, Texas, and duly paid the taxes respectively shown thereon to be due. The alleged payments of income taxes sought to be recovered herein are the amount of deficiencies assessed against and collected, with interest thereon, from the Plaintiffs, which deficiencies resulted from (1) the action of the Commissioner of Internal Revenue, hereinafter referred to as Commissioner, in the setting up of salvage value for certain depreciable assets used in the trade or business of Plaintiffs; (2) the disallowance by the Commissioner of a deduction on Plaintiffs' 1960 income tax return in the amount of $500.00 paid by Loyce Phillips as rental on casing used in an oil well in which Loyce Phillips was part owner and the capitalization of the entire amount of $1,000.00 paid by all of the owners of the full interest for the rental of said casing; and (3) the disallowance by the Commissioner of the deduction by Plaintiffs on their income tax return filed for the year 1960 of certain intangible drilling and development cost in the amount of $9,000.00. The Defendant concedes that the capitalization of the full amount of $1,000.00, the total cost of the rental of casing used in a certain oil well, was erroneous and the parties agreed that $500.00, the portion of said $1,000.-00 attributable to Plaintiffs' interest in said well, is properly to be capitalized by Plaintiffs and amortized over the ten-year estimated productive life of the lease on which the well was located. The parties, by Supplemental Stipulation No. 1, above referred to, have agreed as to the salvage value to be attributable to the assets of Plaintiffs that were salvageable and the rate of depreciation for the depreciable assets of Plaintiffs. Therefore, the only question remaining for decision by the Court is the one relating to the action of the Commissioner in disallowing for the calendar year 1960 a certain alleged intangible drilling and development cost to Loyce Phillips in the amount of $9,000.00. The remainder of

this opinion will be directed to that question.

Upon his graduation from the University of Texas in 1949 with a B.S. degree in Geology, Plaintiffs' son, Jack L. Phillips, became and since that time has been continuously associated with his father in charge of drilling and production of oil and gas. In all transactions hereinafter referred to Jack L. Phillips acted both for himself and as agent for his father, Loyce Phillips.

Early in September 1960 Humble Oil and Refining Company, hereinafter referred to as Humble, acting by and through its agent and employee, Grover Hubley, hereinafter referred to as Hubley, contacted Jack L. Phillips with regard to Loyce Phillips taking a farmout of certain oil and gas leases covering lands located in the Manuel Rionda Survey in Freestone County, Texas, and drilling a well into the Woodbine formation exploring for oil and gas. This well for convenience will hereinafter be referred to as the Pace Well. Hubley, on behalf of Humble, offered to pay $12,000.00 for the performance of the terms and conditions of the offered farmout. Jack L. Phillips advised Hubley that the cost of drilling a well to the depth of the Woodbine formation in accordance with the specifications required by Humble would be approximately $14,000.00 to $14,500.00. Hubley and Jack L. Phillips did not reach an agreement as to the farmout and the said Jack L. Phillips left the office of Hubley. A few days subsequent thereto but prior to September 22, 1960, Hubley, believing that Jack L. Phillips was not interested in the farmout on the terms offered, contacted Harry S. Phillips, who is not related to either of the Plaintiffs or Jack L. Phillips, and offered said farmout to the said Harry S. Phillips on the same terms it had been offered to Jack L. Phillips. The farmout was accepted by Harry S. Phillips on the terms it was offered, namely, that Phillips would drill the Pace Well into the Woodbine formation, and for his so doing Humble would pay him $12,000.-00, and when the well reached the casing point in the Woodbine formation, Humble had the option to take over the operation of said well, in which event Humble would pay Harry S. Phillips the sum of $12,000.00, would complete said well at its cost and would assign to the said Harry S. Phillips an overriding royalty of 1/16th of 8/8ths of all oil and gas produced from the acreage involved in the farmout. Harry S. Phillips subcontracted the actual drilling of the well to Gibson Drilling Company. The well was drilled into the Woodbine formation as of September 30, 1960, and was not commercially productive in that formation. In drilling said well to the Woodbine formation the drill hole passed thru the Sub-Clarksville formation, from which formation Loyce and Jack L. Phillips had brought in producing wells in the area of the Pace Well which they were then producing. Humble's principal interest was in the Woodbine production and it had very little, if any, interest in the Sub-Clarksville production in the area.

Shortly after his conversation with Hubley relative to the farmout, above referred to, and prior to September 20, 1960, Jack L. Phillips went to Freestone County to find the approximate location where the Pace Well was to be drilled. As he was leaving the location, he met Harry S. Phillips who was trying also to find the location and who in the ensuing conversation advised Jack L. Phillips that he, Harry S. Phillips, had taken the farmout for the drilling of the Pace Well which Hubley had discussed with Jack L. Phillips. Immediately following that conversation with Harry S. Phillips, Jack L. Phillips went to Hubley's office and advised Hubley that it was his understanding that the proposed farmout was still being negotiated between Hubley and himself. Hubley advised Jack L. Phillips that it was his understanding that Jack L. Phillips had turned down Hubley's offer of the farmout and that such farmout had been offered to and accepted by Harry S. Phillips on the same terms as offered to Jack L. Phillips. During the course of that conversation Hubley further advised Jack L. Phillips to the effect

that if the Pace Well were dry in the Woodbine formation, that Humble would probably let Jack L. Phillips have the well.

On or about September 29, 1960, when it appeared to Humble, Harry S. Phillips and Jack L. Phillips that the Pace Well would not be a producer in the Woodbine formation, Jack L. Phillips and Humble had further discussions relative to Jack L. Phillips taking over the Pace Well under a farmout agreement and completing same as a producing well in the Sub-Clarksville formation. No agreement or understanding was reached at that time but Hubley told Jack L. Phillips, in effect, to submit to him in writing his offer for the taking of the Pace Well farmout. Pursuant to that request Jack L. Phillips submitted to Hubley a letter dated September 30, 1960, setting forth therein the terms under which he would take said farmout from Humble. The first sentence of that letter read:

"It is my understanding that your Farm Out with Harry Phillips on the above captioned Unit will terminate when the well being drilled has reached the casing point and that Humble Oil & Refining Company will own all interest in the well thereafter."

In that letter Jack L. Phillips suggested as the first alternative that the Pace Well be plugged and abandoned and that Loyce Phillips be allowed to drill a new well at a location nearby. Under this alternative Humble was to have a full 1/8th of 8/8ths overriding royalty interest. The second alternative submitted in that letter provided for Loyce Phillips completing the well in the Sub-Clarksville formation and either paying to Humble the sum of $12,000.00 and a full 1/16th of 8/8ths overriding royalty and the assumption of the 1/16th overriding royalty to Harry S. Phillips provided for in the farmout from Humble to Harry S. Phillips or paying to Humble no cash but giving Humble a 3/16ths of 8/8ths overriding royalty and the assumption of the 1/16th overriding royalty to Harry S. Phillips provided for in the farmout agreement between Hum-

ble and Harry S. Phillips. Two or three days after September 30, 1960, Humble and Jack L. Phillips for the first time reached an agreement by which Loyce Phillips was to take the Pace Well farmout, which agreement is set forth in a letter from Humble to Loyce Phillips dated October 5, 1960, which was accepted by Loyce Phillips on October 11, 1960, and a letter from Humble to Harry S. Phillips dated October 6, 1960, which was accepted by Harry S. Phillips on October 6, 1960, and by Loyce Phillips on October 11, 1960. Under the terms of said agreement Loyce Phillips was to attempt to complete the Pace Well in the Sub-Clarksville formation and was to assume all of Humble's obligations and liabilities under the farmout agreement between Humble and Harry S. Phillips, above referred to, and was to pay Harry S. Phillips the sum of $12,000.00 for drilling said well to the depth specified in said farmout between Humble and Harry S. Phillips. Said agreement further provided that Humble was to have a 1/16th of 8/8ths overriding royalty. Neither Loyce Phillips nor Jack L. Phillips at any time prior to that agreement being reached two or three days subsequent to September 30, 1960, had any interest in the Pace Well or the oil and gas leases covered by the farmout agreement between Humble and Harry S. Phillips, above referred to.

Insofar as Jack L. Phillips and Loyce Phillips are concerned, Jack L. Phillips owned 25% interest in the farmout from Humble and Loyce Phillips owned the remaining 75% interest. On October 11, 1960, Loyce Phillips paid by check to Harry S. Phillips the sum of $12,000.-00—$9,000.00 of which was attributable to Loyce Phillips' interest in the Pace Well farmout and the remaining $3,000.-00 of which was attributable to Jack L. Phillips' interest in said farmout. Thereafter Loyce Phillips completed the Pace Well as a producer in the Sub-Clarksville formation, and on January 24, 1961, pursuant to its obligations set forth in its letter to Loyce Phillips dated October 5, 1960, above referred to, Humble

assigned certain acreage around the Pace Well to Loyce Phillips.

In completing the well in the Sub-Clarksville formation Loyce Phillips and Jack L. Phillips expended the sum of $3,734.64. In his 1960 tax return Loyce Phillips claimed as a deduction his 75% of that sum as intangible drilling and development costs and in addition thereto deducted $9,000.00 of the $12,000.00 paid Harry S. Phillips, as aforesaid, as intangible drilling and development costs. The Commissioner allowed Loyce Phillips his proportionate part of the sum of $3,734.64 as a deduction but took the position that said sum of $9,000.00 did not represent intangible drilling and development costs and, therefore, disallowed said sum of $9,000.00 as a deduction. Thus the question remaining in this case is whether the sum of $12,000.00 paid by Loyce Phillips and Jack L. Phillips to Harry S. Phillips, as aforesaid, was an intangible drilling and development cost within the meaning of the Internal Revenue Code and the applicable regulations. The Court finds and concludes that under the above facts it was not.

The controlling statute is Section 263 (c), Internal Revenue Code of 1954 (26 U.S.C.A. § 263(c)) which provides, in effect, that regulations shall be prescribed corresponding to the regulations which granted the option to deduct as expenses intangible drilling and development costs in the case of oil and gas wells and which were recognized and approved by the Congress in House Concurrent Resolution 50, Seventy-ninth Congress, 59 Stat. 844. Since the regulations required by said Section 263(c) have not yet finalized, the applicable regulations, under the provisions of Section 7807(a), Internal Revenue Code of 1954 (26 U.S.C.A. § 7807(a)), are Treasury Regulations 118, Section 39.23(m)–16.

■ Plaintiffs in their brief concede that in order for Loyce Phillips to be able to deduct the claimed intangible drilling and development costs in connection with the drilling of the Pace Well, which were disallowed by the Commissioner, Loyce Phillips at the time said costs were incurred must have been an "operator" within the meaning of the regulations and must have *undertaken* or *incurred* said costs. Referenced regulations define "operator" as being " * * * one who holds a working or operating interest in any tract or parcel of land either as a fee owner or under a lease or any other form of contract granting working or operating rights." It seems to be settled that deductions for income tax purposes will be allowed only when granted by clear language of either a statute or an authorized regulation. 1 Mertens Law of Federal Income Taxation, Section 3.08, page 17.

■ In contending that Loyce Phillips was an "operator" within the meaning of the regulations, above referred to, Plaintiffs, referring to a purported oral agreement between Humble and Jack L. Phillips with reference to the Pace Well farmout and the effect thereof, in their brief stated: "Even before the well was spudded it was orally agreed that the Sub-Clarksville rights were plaintiff's subject to the condition subsequent that the Woodbine was non-productive. This, it is submitted, gave plaintiff a defeasible operating interest in such formation. This being true, Harry S. Phillips was then drilling under a quasi-agency relationship with plaintiff. That is to say, when plaintiff acquired his defeasible operating interest in the well, the corresponding tacit obligation then arose whereby plaintiff 'undertook' to pay the development costs subject to the condition that the Woodbine was dry." It is obvious from the quoted language from Plaintiffs' brief that the keystone to Plaintiffs' contention that Loyce Phillips was an "operator" is the existence of an oral agreement between Humble and Jack L. Phillips to the effect that the Sub-Clarksville rights in the Pace Well were to belong to Loyce Phillips and Jack L. Phillips subject to the Woodbine formation being nonproductive while the Pace Well was being drilled to the casing point

in the Woodbine formation. The evidence in this case fails to show that there was any such agreement and the Court so finds. The first and only agreement reached between Jack L. Phillips and Humble relative to the Pace Well farmout as a result of which Loyce Phillips and Jack L. Phillips, or either of them, acquired any right, title or interest in and to the Pace Well farmout was the agreement reached between Jack L. Phillips and Hubley two or three days subsequent to September 30, 1960, as evidenced by Humble's letter to Loyce Phillips dated October 5, 1960, and Humble's letter to Harry S. Phillips dated October 6, 1960, above referred to. At that time the drilling to the casing point in the Woodbine formation had been completed by Harry S. Phillips. Therefore, neither Loyce Phillips nor Jack L. Phillips were "operators" within the meaning of the applicable regulations when the costs of drilling the Pace Well to the casing point in the Woodbine sand were incurred nor did Loyce Phillips and Jack L. Phillips, or either of them, undertake or incur the drilling costs incurred in drilling said well to the casing point in the Woodbine formation.

In accordance with the agreement contained in Paragraph 18 of the Stipulation of Facts filed in this cause on May 8, 1964, the parties should undertake to reach an agreement as to the amount of refund due the Plaintiffs in light of the Stipulations between the parties, hereinabove referred to, including the Supplemental Stipulation filed on May 21, 1964, and the findings and conclusions above announced, and file such agreement as a part of the record herein. Upon that being done, judgment will be entered in favor of the Plaintiffs in the amount set forth in such agreement, together with interest thereon as provided by law.

This Memorandum Decision, together with the agreement of the parties as to the amount of recovery the Plaintiffs are to make in this cause, which agreement is to be filed later, will constitute the Findings of Fact and Conclusions of Law in this cause.